FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ OCT 14 2010 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
EDWARD LEVY, D.D.S.,

                Plaintiff,

-against-

SAUL B. COHEN, as Chairman of the Board of
Regents of the State of New York and ANDREW
CUOMO, as Attorney General of the State of New
York,

                Defendants.

**MEMORANDUM & ORDER**

**09-CV-2734 (NGG) (LB)**

------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

Pro se Plaintiff Edward Levy ("Levy") brings this action under 42 U.S.C. § 1983, alleging that Defendants violated his civil rights through various actions relating to the revocation of his dental license in 2007. (Complaint ¶ 1 (Docket Entry # 1).) Levy seeks reinstatement of his dental license and $409,728.50 plus interest in damages. (Complaint at 11.) Defendants move to dismiss the claims against them under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (See Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint ("Motion") (Docket Entry # 15-1).) As set forth below, the court grants Defendants' motion to dismiss.

**I. STANDARD OF REVIEW**

    **A. Rule 12(b)(1)**

Federal Rule of Civil Procedure 12(b)(1) allows defendants to challenge the court's subject-matter jurisdiction by means of a motion to dismiss. In reviewing a motion to dismiss under Rule 12(b)(1), courts must "accept as true all material factual allegations in the complaint," Shipping Fin. Serv. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir.1998) (citation

1

omitted), but refrain from "drawing from the pleadings inferences favorable to the party asserting [jurisdiction]," APWU v. Potter, 343 F.3d 619, 623 (2d Cir.2003) (citation omitted). Challenges to the court's subject-matter jurisdiction based on immunity to suit under the Eleventh Amendment to the Constitution are more properly characterized as substantive defenses than jurisdictional defects. Woods v. Rondout Valley Central School Dist. Bd of Educ., 466 F.3d 232, 237-38 (2d Cir. 2006).

### B. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows for dismissal of a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In evaluating a motion to dismiss under Rule 12(b)(6), a court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co., 517 F.3d 104, 115 (2d Cir. 2008) (citation omitted). To survive a Rule 12(b)(6) motion, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009) (quoting Bell Atl. Corp. v. Twombly, 555 U.S. 544, 570 (2007)). In evaluating a motion to dismiss, a court may consider "any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit."[1] ATSI Commc'ns Inc. v. Shaar Fund. Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). Dismissal under Rule 12(b)(6) based on an affirmative defense is appropriate "if the defense

---

[1] The court has construed the attachments to Levy's Complaint as part of the Complaint itself. See Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes.") In reviewing the Defendants' motion to dismiss, the court has considered only Levy's Complaint (Docket Entry # 1), Defendants' Motion to Dismiss the Complaint (Docket Entry # 15-1); Levy's Opposition to Defendants' motion (Docket Entry # 15-12); and Defendants' reply (Docket Entry # 15-14). Because Defendants' motion can be decided on these papers alone, the Court has excluded all other materials from its consideration of Defendants' motion, including Defendants' exhibits, and does not convert Defendants' motion to dismiss into one for summary judgment under Federal Rule of Civil Procedure 12(d).

appears on the face of the complaint." Staehr v. Hartford Fin. Servs. Group, 547 F.3d 406, 426 (2d Cir. 2008) (citation omitted). Where a plaintiff proceeds pro se, the court reads his submissions liberally and interprets them as raising the strongest arguments they suggest. See McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004); Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). Nonetheless, "although [courts] construe pro se submissions liberally, [they] do not create arguments out of whole cloth." United States v. Bethea, No. 09-4125-cr, 2010 WL 2803086, at *1 (2d Cir. July 19, 2010).

## II. BACKGROUND

In 1997, the New York State Department of Health ("DOH") authorized Levy, then a licensed dentist, to participate in its Medicaid program, allowing Levy to collect reimbursements from Medicaid for dental work performed on qualifying patients. (Complaint ¶ 5.) DOH then began to investigate Levy for his Medicaid billing practices. (Id. ¶ 7.) As part of this investigation, DOH informed Levy that it was withholding all current and future Medicaid payments from him, and was holding his pending payments, totaling approximately $409,728.50, in escrow. (Id. ¶ 8.) Soon after its notice, DOH informed Levy that it was terminating his participation in the Medicaid program. (Id.)

Levy then retained an attorney, Jacob R. Evseroff, to challenge DOH's termination of his Medicaid provider status in both state and federal court. (Id. ¶ 9.) On the advice of his lawyer, Levy continued to practice dentistry on Medicaid-qualifying patients as a salaried dentist employed by other Medicaid-qualifying dentists, even though Levy's Medicaid service provider status had been terminated by DOH. (Id. ¶¶ 10-14, Ex. C.)

Levy was then indicted in Queens and Nassau Counties for submitting reimbursements to Medicaid for his dental services after his termination as a Medicaid service provider. (Id. ¶ 11,

Exs. A, C.) Levy eventually entered into a single plea agreement that required him to make restitution to New York State in the amount of $485,000. The agreement further provided that $409,728.50 of that amount would be satisfied by Levy assigning his right to the Medicaid funds held for him in escrow in the New York State Medicaid Fraud Restitution Fund, administered by the New York State Deputy Attorney General.

Due to Levy's convictions, the New York State Board of Regents established a disciplinary Review Committee (the "Regents Review Committee") to assess Levy's conduct in the Medicaid program. (Id. ¶ 22, Ex. C.) Defendant Saul B. Cohen ("Cohen") was Chairman of that committee.[2] (Id., Ex. C.) On December 12, 2006, the Regents Review Committee held a disciplinary hearing to investigate Levy's conduct. (Id.) Levy was represented by an attorney, testified, and presented one witness, Anastasios Sarikas, an attorney and associate of Mr. Evseroff. (Id.) Mr. Sarikas testified that Mr. Evseroff informed him that he had counseled Levy to continue to practice dentistry. (Id., Ex. C at 10-14.) On February 6, 2007, the Regents Review Committee unanimously recommended to the Board of Regents that Levy's dental license be suspended for five years, with the last two years of the suspension stayed. (Id., Ex. A.) On March 21, 2007, the Board of Regents rejected the recommendation from the Regents Review Committee and, "based upon a more serious view of [Levy's] misconduct," revoked Levy's license to practice dentistry. (Id., Ex. B.) Levy does not allege he sought an Article 78 proceeding following the revocation. N.Y. C.P.L.R. §§ 7800-7806. Levy commenced this action on June 26, 2009.

---

[2] Contrary to Levy's case-caption, Cohen was the Chairman of the Regents Review Committee that investigated Levy's conduct, not the Chairman of the New York State Board of Regents. (Complaint, Ex. C.)

## III. DISCUSSION

### A. Claims Against Cohen

Levy claims that Cohen violated his "civil rights" under 42 U.S.C. § 1983 by revoking his license to practice dentistry. (Complaint ¶¶ 25-28.) To the best the Court can ascertain, Levy bases his claim on three grounds. First, that because Cohen had discretion to impose a less severe penalty than revocation of Levy's dental license, Cohen violated Levy's civil rights by doing so. (Id. ¶ 25; Opposition at 19-21.) Second, that the "hearing officer for the Office of Professional Discipline and the Board of Regents," presumably Cohen, violated Levy's civil rights by "disregard[ing]" Mr. Sarikas's testimony. (Complaint ¶ 26.) And third, that the same "hearing officer" violated Levy's civil rights by "disregard[ing]" certain "undisputed facts," namely, that Levy's plea agreement required him to make $485,000 in restitution despite the fact that amount in controversy of the offenses to which Levy pled guilty totaled only $7,175.50. (Id. ¶ 27.)

"The first step in any [§ 1983] claim is to identify the specific constitutional right allegedly infringed." Albright v. Oliver, 510 U.S. 266, 271 (1994). Although Levy does not identify a specific constitutional entitlement that Cohen allegedly violated, Levy claims that he was "deprived of [his] Constitutional right to earn a livelihood by fraudulent deprivation" of his dental license. (Id. ¶ 1.) Read liberally, Levy's Complaint asserts that Cohen violated his Fourteenth Amendment right to due process. See U.S. Const., amend. XIV § 1 ("[N]or shall any State deprive any person of life, liberty, or property, without due process of law . . . .").

"[I]n evaluating what process satisfies the [Fourteenth Amendment] Due Process Clause, the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees." Rivera-Powell v.

5

N.Y.C. Bd. of Elections, 470 F.3d 458, 465 (2d Cir. 2006) (citing Hudson v. Palmer, 468 U.S. 517, 532 (1984)) (internal quotations omitted). Levy does not bring his claims against Cohen as the "random and unauthorized act" of a state official. "[G]overnment actors' conduct cannot be considered random and unauthorized . . . if the state delegated to those actors the power and authority to effect the very deprivation complained of . . . even if the act in question was not sanctioned by state law." Id. at 465 (quoting Zinermon v. Burch, 494 U.S. 113, 138 (1990)) (internal quotations omitted). New York State Education Law § 6510 empowers the Board of Regents to conduct a disciplinary hearing for a licensed dentist and, upon a finding of guilt, revoke his dental license. This revocation is the "very deprivation complained of" by Levy. See Rivera-Powell, 470 F.3d at 465.

Due process violations "based on established state procedures" require a minimal pre-deprivation hearing. DiBlasio v. Novello, 344 F.3d 292, 302 (2d Cir. 2003). That hearing need not be extensive or elaborate; the plaintiff need only have had adequate notice of the hearing and on opportunity to be heard. Rivera-Powell, 470 F.3d at 466-67. As demonstrated by Levy's Complaint, Levy had such opportunities, and more. The Complaint shows that the Board of Regents afforded Levy two levels of consideration of the disciplinary charges against him: the first by the Regents Review Committee (Complaint ¶¶ 22-24, Exs. A, C) and the second by the Board of Regents (id., Ex. B). At the Regents Review Committee disciplinary hearing, Levy was statutorily entitled to – and exercised his rights to – testify on his own behalf, present witnesses and documentary evidence, and be represented by counsel. (Id. ¶¶ 22-24, Exs. C); see N.Y. Educ. Law § 6510(4)(c). The Regents Review Committee then issued a detailed written report of its findings – referencing testimony Levy alleges it disregarded – and submitted that report to the Board of Regents for review. (Complaint ¶¶ 23-24, Ex. A); see N.Y. Educ. Law §

6510(3)(d). The Board of Regents reviewed the transcript of the evidence presented by Levy at his disciplinary hearing, along with the Regents Review Committee's written report, before revoking Levy's dental license. (Complaint, Ex. B); see N.Y Educ. Law § 6510(4)(d). These procedures more than afforded Levy due process.

Further, Levy's post-deprivation remedy satisfied due process. In the medical license revocation context, the opportunity to pursue an Article 78 proceeding in New York State court constitutes a constitutionally sufficient post-deprivation remedy. Harris v. Mills, 572 F.3d 66, 76 (2d Cir. 2009). The procedures governing the Board of Regents disciplinary review process entitled Levy to challenge its finding in an Article 78 proceeding in state court. See N.Y. Educ. Law § 6510(5). Nothing in Levy's Complaint suggests he availed himself of this opportunity. Under these circumstances, "notice and an opportunity to be heard . . . coupled with the Article 78 post-deprivation remedy, is enough to satisfy due process." Harris, 572 F.3d at 76. Even reading Levy's Complaint as raising the strongest possible arguments against the sufficiency of the state's procedures, the process afforded to Levy both before and after his license revocation command dismissal of his claims against Cohen.

### B. Claims Against Cuomo

For Levy's claims against New York State Attorney General Andrew Cuomo ("Cuomo"), Levy alleges that Elliot Spitzer ("Spitzer"), the former New York State Attorney General, violated his constitutional right to due process by "seizing" the escrow Medicaid funds as part of the restitution required by Levy's plea agreement. (Complaint ¶¶ 29-30.) To the best the Court can ascertain, Levy bases his claim on two grounds. First, that Spitzer violated Levy's due process right by transferring the funds to his gubernatorial campaign. (Id. ¶¶ 29-30.) And second, that the plea agreement was illegal because Levy would have been unable to post bail if

he had not pleaded guilty. (Id.) Defendants argue that because the Eleventh Amendment bars suit against Cuomo, the court either lacks subject-matter jurisdiction over these claims, or the claims fail to state a claim upon which relief can be granted. (Motion at 12-14.) Levy does not respond to these arguments.

The Eleventh Amendment generally affords states immunity from suit in federal court absent those states' express consent. Dube v. State Univ. of N.Y., 900 F.2d 587, 594 (2d Cir. 1990) (citing Papasan v. Allain, 478 U.S. 265, 276 (1986)). This protection extends to agencies or officers of the state acting in their "official capacities" if those entities or officers are mere "arms of the state." Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429 (1997); Gollomp v. Spitzer, 568 F.3d 355, 3675-66 (2d Cir. 2009); McGinty v. New York, 251 F.3d 84, 96 (2d Cir. 2001). An officer acts in his "official capacity" if the actions alleged in the complaint that gave rise to the purported Constitutional violation are "official functions" of the office. DiBlasio, 344 F.3d at 296-97. Eleventh Amendment immunity does not extend to state officials sued in their individual capacities. Ying Jing Gan v. City of New York, 996 F.2d 522, 529 (2d Cir. 1993). When a plaintiff brings claims against Eleventh Amendment-protected state agencies or officers, the court must dismiss those claims. See Papasan, 478 U.S. at 276; Mamot v. Board of Regents, 367 Fed. Appx. 191, 192-93 (2d Cir. 2010).

Under the Ex parte Young doctrine, however, a plaintiff may sue state officials in their official capacities for injunctive relief if the purported constitutional violation is "ongoing" and the relief sought is "prospective" rather than retroactive. See Verizon Md., Inc. v. Public Svc. Com'n of Md., 535 U.S. 635, 645-47 (2002); In re Deposit Ins. Agency, 482 F.3d 612, 617 (2d Cir. 2007); see also Ex parte Young, 209 U.S. 123 (1908). Consequently, the Eleventh

Amendment bars suits against state officials seeking retroactive monetary relief. Edelman v. Jordan, 415 U.S. 651, 664-65 (1974).

Because Levy's allegations against Cuomo relate to Levy's plea agreement, Levy brings his claims against Cuomo in his "official capacity" for Eleventh Amendment purposes. See Taylor v. Kavanaugh, 640 F.2d 450, 453 (2d Cir. 1981). Consequently, the Eleventh Amendment bars those claims. Levy's Complaint seeks "$409,728.50 together with interest from the date that the escrow account was set up, together with the costs and disbursements of this action." (Complaint at 11.) Even read liberally, Levy's demand clearly seeks monetary restitution from the state for the past harms alleged in his Complaint relating to the Medicaid escrow fund. The Eleventh Amendment clearly immunizes state officials from this sort of retroactive monetary relief. See Edelman, 415 U.S. at 664-65. The court, therefore, will dismiss Levy's claims against Cuomo for failure to state a claim rather than for a lack of subject matter jurisdiction. See Woods, 466 F.3d at 237-38.

Alternatively, construing Levy's claims against Spitzer in his personal capacity, these claims still must be dismissed. Spitzer is not a party to the instant lawsuit; consequently, the court cannot afford any relief sought by Levy against Spitzer and must dismiss these allegations for failing to state a claim.

## IV.  CONCLUSION

The court is not unsympathetic to Levy's plight of losing his dental license. But Levy had a full and fair opportunity to redress his grievances in an Article 78 proceeding in state court.

For the foregoing reasons, Defendants motion to dismiss the Complaint is GRANTED.

The case is dismissed and the Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: Brooklyn, New York
October 12, 2010

        /s/ Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge